IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Robert E. Blackburn**

Civil Action No. 24-cv-02966-REB

A.M.V.,

    Plaintiff,

v.

FRANK BISIGNANO,[1] Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING ACTING COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[2] filed October 24, 2024, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.[3]

---

[1] On May 6, 2025, the Senate confirmed Frank Bisignano as Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted for Leland Dudek, former Acting Commissioner of Social Security, as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[3] Although the parties consented to have the matter referred to and determined by a United States magistrate judge (*see* [#9], filed October 28, 2024), I exercise my discretion under **D.C.COLO.LAPR** 72.2(d) to decline to enter an order of reference under 28 U.S.C. § 636(c).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges she is disabled as a result of a host of serious physical impairments, as well as (most relevantly for purposes of this appeal) anxiety and depression.  After her applications for disability insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge.  This hearing was held on May 29, 2024.  At the time of the hearing, plaintiff was 52 years old.  She has an eleventh grade education and past relevant work experience as hand packer.  She has not engaged in substantial gainful activity since at least January 4, 2020, her alleged date of onset.

The ALJ found plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits.  Although the medical evidence established plaintiff suffered from severe physical impairments, the judge found the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  The ALJ concluded plaintiff's alleged mental impairments were not severe.  She determined plaintiff had the residual functional capacity to perform a range of light, unskilled work with physical, postural, and environmental, but no mental, limitations.  Although this conclusion precluded plaintiff's past relevant work, the ALJ found there were other jobs existing in substantial numbers in the national and local economies she could perform.  She therefore found plaintiff not disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

2

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater,*** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite sequential evaluation process for determining whether a claimant is disabled:

    1.    The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity.  A claimant who is working is not disabled regardless of the medical findings.

    2.    The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

    3.    The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

>       4.  If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
>       5.  If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v).[4]  *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*, 912 F.2d at 1196.  It requires

---

[4] Throughout this opinion, I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits.  Identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

more than a scintilla but less than a preponderance of the evidence.  ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Acting Commissioner.  ***Id.***

### III.  LEGAL ANALYSIS

In a single point of error, plaintiff alleges the disability decision must be reversed because the ALJ failed to include mental restrictions in her residual functional capacity determination or, alternatively, to explain why she did not.  Finding no such reversible error in the ALJ's decision, I affirm.

The ALJ discussed plaintiff's alleged mental impairments at some length at step two of the sequential evaluation,[5] but ultimately concluded the evidence showed plaintiff had no more than "mild" limitations in each of the four Paragraph B criteria[6] and

---

[5] At step two of the sequential evaluation, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment.  ***See Dray v. Astrue***, 353 Fed.Appx. 147, 149 (10th Cir. 2009).  "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  ***See also* Social Security Ruling** 85-28, 1985 WL 56856 at *3 (SSA 1985) (impairment which is merely a "slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered" is not severe).

[6] Section 12.00 of the listings describes various mental disorders.  Each of the nine diagnostic categories identified therein is defined by three criteria:  a statement describing the disorder (the capsule definition), a set of medical findings (the paragraph A criteria) and a set of impairment-related functional limitations (the paragraph B criteria).  (Alternative functional criteria (the paragraph C criteria) are

5

therefore that she did not suffer from a severe mental health impairment, *see* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); *see also Gruenberger v. Berryhill*, 2019 WL 2422788 at *3 (D. Colo. June 10, 2019). In this regard, the ALJ noted that medication had improved plaintiff's condition and that despite reports that plaintiff experienced difficulty getting out of bed and concentrating, she consistently was reported to have full orientation and normal mood and affect. (Tr. 13.)

The ALJ also reviewed the opinion of a consultative examiner who suggested plaintiff might have marked limitations in the ability to sustain concentration and mild to moderate limits in the ability to adapt to a normal work routine. (*See* Tr. 2038-2041.) Nevertheless, she found the contrary opinions of two state agency psychological consultants, both of whom opined plaintiff's alleged mental impairments were not severe, more persuasive given the medical evidence of record. (*See* Tr. 76-84, 97-106.) Plaintiff now alleges the ALJ erred in failing either to include any mental limitations in her residual functional capacity assessment or explain why she did not.

---

included for certain classes of disorders.) A claimant's impairment meets or equals a listed impairment, and therefore is presumed to be disabling, if the diagnostic description of the capsule definition and the criteria of both paragraphs A and B, or A and C, where appropriate, are satisfied. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00A.

Paragraph B requires proof that a medically determinable impairment has resulted "in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." *See id.*, § 12.04B.

I cannot agree. It is of course the law that the ALJ must consider all a claimant's alleged impairments, both severe and non-severe, in combination in determining residual functional capacity. *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004); *Masse v. Astrue*, 2010 WL 3853318 at *4 (D. Colo. Sept. 28, 2010). The ALJ therefore cannot simply substitute a step-two finding of non-severity for consideration of the impact of such impairments on the claimant's residual functional capacity at step four. *See* **Social Security Report** 96-8p, 1996 WL 374184 at *4; *Apodaca v. Colvin*, 2013 WL 1876758 at *4 (D. Colo. May 3, 2013).

By the same token, the ALJ is not necessarily required to repeat her findings from step two in the context of the step four analysis. *See Endriss v. Astrue*, 506 Fed. Appx. 772, 777 (10th Cir. 2012); *M.L. v. O'Malley*, 2024 WL 3792378 at *7 (D. Colo. Aug. 13, 2024). The Tenth Circuit has held that an ALJ need not explicitly reference a non-severe impairment when formulating a residual functional capacity so long as she "[takes] into account the entire record and all symptoms in determining [the residual functional capacity]," and especially where she acknowledges her obligation at step four to consider all alleged impairments, severe and non-severe. *See Bradley v. Colvin*, 643 Fed. Appx. 674, 676 (10th Cir. 2016). So long as the court can discern from the opinion the ALJ's reasoning, meaningful review is possible and there is no reversible error. *See B.D. v. Commissioner of Social Security Administration*, 2025 WL 854342 at *5 (D. Colo. March 19, 2025) *Musick v. Astrue*, 2013 WL 441064 at *9 (D. Kan. Feb. 5, 2013); *Sanchez v. Berryhill*, 2019 WL 1254997 at *5 (D. Colo. March 18, 2019).

Such is the case here.  At step two, in discussing why she rejected the more severe limitations suggested by the consultative examiner, the ALJ stated:

> In addressing areas of understanding, memory, applying information, concentrating, and persisting, the claimant has generally had normal findings or only mild deficits on mental status exams during the alleged disability period. . . .
>
> In the area of social functioning/interacting with others, the claimant has show some anxiety, but has been able to control her emotions and been found to be cooperative with treatment providers and is able to do activities requiring public interaction such as grocery shopping.  This record does not suggest a significant inability to interact appropriately with others[.]
>
> The record shows little restriction in adaptability and self-management.  The claimant has not been noted to have significant problems with hygiene and dress.  She has behaved appropriately in medical appointments. She reported an ability to perform household chores and do her own shopping.  There is no indication that she would have mental health-related difficulty avoiding hazards and taking appropriate precautions in a workplace.

(Tr. 14.)[7]  It thus is entirely clear to the court how the ALJ concluded that no work-related mental restrictions were indicated as part of plaintiff's residual functional capacity.  Moreover, the ALJ specifically stated she had considered all plaintiff's symptoms in formulating the residual functional capacity determination.  (Tr. 16.)  There thus was no reversible error in this regard.

Moreover, the ALJ's determinations are well-supported by the record.  There is nothing in the evidence before me to indicate plaintiff ever saw a mental health provider

---

[7] Undoubtedly, it would have been preferable for the ALJ to provide record citations to these medical findings.  Nevertheless, as the medical record in this case is not overly extensive, the court's own thorough review – as set forth below – is sufficient to substantiate her findings.

for treatment of her depression and anxiety.  Nevertheless, it appears plaintiff was taking fluoxetine (generic Prozac) for depression for at least several years prior to her alleged date of onset.[8]  **See** 20 C.F.R. § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition[.]").  **See also Martinez v. Astrue**, 2013 WL 1232194 at *3 (D. Colo. March 26, 2013).  At that time, the provider noted the medication "work[ed] well" and described plaintiff's mental condition as "stable" and not chronic.  (Tr. 442-446.)  When plaintiff experienced an exacerbation of her depression in February 2018, her dosage of fluoxetine was doubled. (Tr. 437-441.)  By April 25, plaintiff's depression was noted to be in control and her mental condition was described as "fair."  (Tr. 427-428.)

Longer term, it appears the medication adjustment worked, as plaintiff did not seek medical attention for mental health symptoms again until  November 2020, when she sought medication refills for "anxious/fearful thoughts, difficulty concentrating, difficulty falling asleep, difficulty staying asleep, excessive worry, racing thoughts and restlessness[.]"  (Tr. 417-419.)[9]  When her symptoms had not improved by January 2021, her dosage of fluoxetine was increased to 60 mg a day, and she was referred for counseling.  (Tr. 396.)

---

[8]  It is not entirely clear from the record before me when plaintiff was first diagnosed with depression; there is some indication she may have begun taking 20 mg of fluoxetine for depression in August 2018.  (**See** Tr. 441.)

[9]  The record does not reflect whether plaintiff needed refills because she had stopped taking these medications at some point, although that inference seems supportable based on the length of the gap between her visits complaining of symptoms.  **See** 20 C.F.R. § 404.1530(b) (failure to follow prescribed treatment may be considered in evaluating impairment); **Decker v. Chater**, 86 F.3d 953, 955 (10th Cir. 1996) (same).

That medication adjustment apparently was satisfactory for a time, as plaintiff did not report another acute episode of depression until September 2021. A change of medication was discussed, but apparently not effectuated at that time (*compare* Tr. 579 (option for decreasing fluoxetine and starting Wellbutrin discussed) *with* Tr. 581 (refilling plaintiff's prescriptions for fluoxetine 60 mg)), although plaintiff testified at the hearing that her medication had been changed (*see* Tr. 53).[10] Regardless, at some point thereafter, plaintiff's dosage of fluoxetine apparently was dropped back to 20 mg, and she reported on February 12, 2022, that she again was doing well on the medication. (Tr. 574.) The following week, plaintiff's depression was noted as stable. (Tr. 567, 569.)

This evidence supports a conclusion that although plaintiff had periodic exacerbations of her mental health symptoms, she responded adequately to treatment with medication. *See Pacheco v. Sullivan*, 931 F.2d 695, 698 (10th Cir. 1991) (impairment which responds to treatment is not disabling); *Manning v. Colvin*, 182 F.Supp.3d 1156, 1161 (D. Colo. 2016) (same). That plaintiff apparently suffered from depression and anxiety prior to her alleged date of onset, *see* 20 C.F.R. § 404.1520(b); *Martinez*, 2013 WL 1232194 at *3, and never sought counseling despite repeated suggestions that she do so, *Pacheco*, 931 F.2d at 698; *Abdelmeged v. Colvin*, 2015 WL 5047645 at *4 (D. Colo. Aug. 26, 2015), lends further weight to the ALJ's conclusions that plaintiff's mental health impairments were not severe and imposed no

---

[10] Based on plaintiff's testimony, it appears the adjustment to which she referred was closer in time to the date of the hearing in May 2024, a period for which there are no medical records in the record.

particular limitations on her residual functional capacity. The opinion accordingly must be affirmed.

## IV.  ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is affirmed.

Dated June 11, 2025, at Denver, Colorado.

BY THE COURT:

Bob Blackburn
Robert E. Blackburn
United States District Judge